SARAH CLEMENS SMITH, Appellee, v. ARTHUR COUTANT et ux., Appellants.

No. 46115.

888

NOVEMBER 24, 1942.

John R. Cronin, of Nashua, for appellants.

Geiser & Donohue, of New Hampton, for appellee.

BLISS, J.— Defendants occupied the farm under a written lease for one year commencing on March 1, 1941. They notified the plaintiff that they were entitled to occupy the farm for another year, commencing on March 1, 1942, because the plaintiff had failed to give written notice to them, on or before the first day of the preceding November, of the termination of

the lease, as provided in section 10161, Code, 1939. This defense was alleged in the answer to plaintiff's petition. Plaintiff, in her reply, admitted the execution by the parties of the one-year lease, which by its terms ended on February 28, 1942. She admitted the occupancy of the defendants thereunder, and that no notice of termination under section 10161 had been given. As an affirmative defense, plaintiff alleged that: Prior to September 3, 1941, Mrs. Coutant asked the plaintiff to extend the lease for another year, at which time she told said defendant that she intended to sell the farm and that it would not be for rent; at this time she offered to sell the farm to the defendants; on September 3, 1941, plaintiff sold the farm, and a few days later notified Mrs. Coutant of that fact and that the purchaser would desire possession on March 1, 1942; in this conversation, plaintiff asked said defendant if it would be necessary to serve a notice to vacate and defendant said it would not be necessary; about the last of September 1941, defendants called upon plaintiff and stated that there was certain property on the place which belonged to them and which they desired to remove on March 1, 1942; it was agreed by the parties that the property specified could be taken from the premises; before the 1st of November 1941, defendants informed plaintiff that they had leased a farm near Williamstown for the coming year and were going to move on to it on March 1, 1942; defendants have such a lease; shortly after the sale of the premises, the purchaser informed the defendants that he had bought the farm and intended to move on to it on March 1, 1942, and asked permission to enter at once and do the fall plowing, which he did with the consent of defendants; after November 1, 1941, defendant informed plaintiff that he had rented another farm but would not surrender the plaintiff's farm, but would sublet it, unless plaintiff would pay him $75. Because of the matters just stated, the plaintiff alleged that the defendants had waived the serving of any written notice as provided in said section 10161 and were estopped to assert any rights under said section.

Defendants moved to strike from the reply all allegations and references to estoppel, or to an oral agreement, for the reason that they were not in issue since the essential elements

of estoppel had not been pleaded, and there were no allegations in the reply allowing evidence in support of an oral agreement.

By agreement of the parties, the motion was to be ruled on after trial on the issues and in the submission of the cause. Trial was had upon evidence received in support of the issues as alleged, and the court, after hearing the evidence and arguments of counsel, found "that the allegations of the plaintiff's petition are true and that the facts set forth in plaintiff's reply to defendant's answer are sustained," and decreed the plaintiff entitled to all of the relief prayed for. The court made no reference to the defendants' motion to strike, but the decree, in itself, was an overruling of the motion. There was no merit in the motion as the defenses in the reply were sufficiently alleged. No other question of law was raised by the pleadings, or in the trial court.

I. In this court, the appellants, in support of their contention that the defenses in the reply were not sufficiently pleaded, call attention to our decisions that estoppels are not favored in law. There is language in our own cases, and in decisions of other courts, to that effect. Baldwin v. Lowe, 22 Iowa 367, 371; Cheshire v. McCoy & Henry, 205 Iowa 474, 481, 218 N. W. 329; City Bank of Mitchellville v. Alcorn, 188 Iowa 592, 594, 176 N. W. 628; McIntosh v. McIntosh, 211 Iowa 750, 757, 234 N. W. 234; Stookesberry v. Burgher, 220 Iowa 916, 922, 262 N. W. 820. This is stating it rather too broadly, and ought not be taken too literally. The statement has usually been given in connection with the further statement that every element of estoppel should be proven clearly, convincingly, and satisfactorily, and it was the latter thought that was relevant to the decisions and uppermost in the court's mind. In Anfenson v. Banks, 180 Iowa 1066, 1091, 163 N. W. 608, 616, L. R. A. 1918D, 482, this court, speaking through Justice Weaver, after stating that it is a common expression that "Estoppels are odious," and that we have held that estoppel is not favored in law, and must be clearly proved, also said:

"* * * the rule is one capable of wholesome application when kept within its proper function for the prevention of fraud, actual or constructive. * * * The courts do not hesitate, however,

to uphold a claim of estoppel wherever it is essential to prevent fraud.''

See, also, McIntosh v. McIntosh, supra, 211 Iowa 750, 757, 234 N. W. 234. The authorities quite uniformly, and with sound basis, support these holdings of this court, last referred to. In 19 Am. Jur. 602, section 4, the author states:

''It is a common expression that estoppels are odious and not favored in law. * * * Now estoppels, especially those known as 'equitable' or 'in pais,' are not deemed odious, but are said to be conducive to honesty and fair dealing and promotive of justice and to stand on the broad grounds of public policy and good faith. * * * It is also recognized, however, that it is a doctrine capable of wholesome application; that when properly applied and kept within its proper function, it is founded upon reason and justice and is a principle of good morals as well as of law; * * * and that it often enables right and justice to triumph where nothing else known to jurisprudence can do so.''

To the same effect, the author in 31 C. J. S. 193, section 3, states:

''It is commonly stated in many decisions that estoppels are odious and are not favored in law because they exclude the truth. Nevertheless, the wisdom and justice of the principle of estoppel, especially estoppel in pais, see infra section 63, are generally recognized, the view being founded on principles of equity, morality, and justice, and in accord with good conscience, honesty, and reason; and, as such, the doctrine subserves its true purpose as a plain, practical, fair, and necessary rule of law.''

We reannounce our approval of these principles. In general, the doctrine of equitable estoppel is based upon the grounds of public policy, fair dealing, good faith, and justice, and its purpose is to forbid one to speak against his own act, representations, or commitments, to the injury of one to whom they were directed and who reasonably relied thereon. Such a doctrine is neither odious nor in disfavor, in either law or equity.

In further support of their position that estoppel was

not pleaded in appellee's reply, the appellants quote from Stookesberry v. Burgher, supra, 220 Iowa 916, 921, 262 N. W. 820, 823, as follows:

"In order to constitute equitable estoppel, or estoppel in pais, false representation or concealment of material facts must exist; the party to whom it was made must have been without knowledge of the real facts; that representations or concealment must have been made with the intention that it should be acted upon; and the party to whom it was made must have relied thereon to his prejudice and injury. There can be no estoppel in any event, if any of these elements are lacking."

In McIntosh v. McIntosh, supra, 211 Iowa 750, 757, 234 N. W. 234, 238, we amplified the element of intent. We there said:

"* * * the representation or statement, * * * must have been willfully intended to lead the party setting up the estoppel to act upon the same, or there must have been reasonable grounds to anticipate that he would change his position or in some way act on the faith of the conduct or representations, to his detriment."

See, also, 31 C. J. S. 260, section 69.

It is our judgment that the allegations are broad enough to permit proof of all of the elements commonly held essential to the establishment of an equitable estoppel. The intention, of course, is a matter of inference, to be drawn from the facts and circumstances relied upon to constitute the same. Under the record presented to us, we must presume that the evidence sustained the allegations.

Appellants also insist that the allegations do not constitute an estoppel because it has to do with a future contingency, since the statements or conduct relied upon were all prior to the first day of November, the date fixed by the statute as the last day for giving the written notice terminating the lease. Without conceding or questioning the correctness of the rule contended for, it appears to us to have no applicability. The notice might have been given at any time prior to November 1st. The conduct and the representations and statements of the appellants

at the very time they took place were with respect to an existing fact, to wit, their then position, intention, or state of mind; that they were waiving the right to the notice, and that they were not insisting and would not insist upon its being given, nor claim any rights if it was not given. By their words and actions, they caused the appellee to omit and forbear doing something which she otherwise would have done. As said by Justice Mitchell, in Seymour v. City of Ames, 218 Iowa 615, 619, 255 N. W. 874, 876:

"An estoppel is based upon the idea that one who has made a certain representation *or taken a certain position*, should not thereafter be permitted to change his position to the prejudice of one who has relied thereon." (Italics are ours.)

██ II. In addition to the defense of estoppel, the allegations of the reply expressly claim waiver of the notice, and are sufficient to sustain that claim. The doctrines of waiver and of equitable estoppel are closely related and the dividing line between them is oftentimes difficult to locate. Some elements are common to both, and the relief asked is usually the same in essentials. 31 C. J. S. 245, section 61.

In North American Ginseng Co. v. Gilbertson, 200 Iowa 1349, 1353, 206 N. W. 610, 612, we said:

"An implied waiver is, in a sense, more or less a direct kin to an estoppel. There is, however, a distinction often to be made between them, and a waiver does not necessarily include all of the elements of an estoppel."

In Hexom v. Knights of Maccabees, 140 Iowa 41, 46, 117 N. W. 19, 20, the court said:

"A waiver is the intentional relinquishment of a known right, or such conduct as warrants an inference of such relinquishment, * * * and, where conduct is relied upon to constitute waiver, it must appear that the insured was induced by the association to do or omit some act which he would not otherwise have done or omitted. 3 Am. & Eng. Ency. 1089, note. It is not the intention of the insurer, but the effect upon the insured, which gives vitality to the estoppel."

894

We have repeatedly defined waiver in the terms stated in the Hexom case. See Sioux Falls Broadcasting Assn. v. Henry Field Co., 224 Iowa 655, 658, 277 N. W. 284; McPherrin v. Sun Life Assur. Co., 219 Iowa 159, 162, 163, 257 N. W. 316; Hemmings v. Home Mut. Life Ins. Assn., 199 Iowa 1311, 1318, 203 N. W. 818; Currie v. Continental Cas. Co., 147 Iowa 281, 286, 126 N W. 164, 140 Am. St. Rep. 300; Walsh v. Aetna Life Ins. Co., 30 Iowa 133, 142, 6 Am. Rep. 664.

In the case before us, the reply expressly alleged waiver, and also such conduct as warranted an inference of relinquishment by the appellants of the right to the statutory notice. It was not necessary for the appellee to either allege or prove any contract, or any consideration, but the allegation of an agreement between the parties that the appellants might and would remove certain property on or before March 1, 1942, was the allegation of a circumstance tending to establish both estoppel and waiver. As stated in Schuetz v. International Harvester Co., 167 Iowa 634, 639, 149 N. W. 855, 857:

"A consideration is not essential thereto [waiver]. Mahaska County v. Crist, 87 Iowa, 415. Nor is the element of prejudice as in estoppel necessarily involved. Sommers v. Germania National Bank, 152 Wis. 210 (138 N. W. 713), * * *."

However, in the case at bar, a repudiation by the appellants of their conduct prior to November 1st would subject the appellee to injury and prejudice.

There is no merit in the contention of the appellants that the reply did not sufficiently allege either estoppel or waiver. Either one was a sufficient defense in itself.

III. Appellants have argued that the provision of section 10161, Code, 1939, that "the tenancy shall continue for the following crop year upon the same terms and conditions as the original lease unless written notice for termination is given by *either party* to the other not later than November 1, whereupon the tenancy shall terminate March 1 following" (italics supplied) is a statutory right which cannot be nullified either by contract, or by estoppel, or by waiver. In other words, that the tenancy cannot be limited to the first year ending on

March 1st, as stipulated in the lease, by any agreement of the landlord and the tenant, or by any waiver, or estoppel, on the part of the tenant, but only by the giving of the notice as specified in the section. A pertinent inquiry might be with respect to the rights of the tenant if neither gave the notice. In that situation, could the landlord compel him to farm the place for another year? This question is not before us for determination and we do not answer it.

In Crittenden v. Jensen, 231 Iowa 445, 1 N. W. 2d 669, we held that the landlord and the tenant might, by an agreement entered into on September 23d, thereby terminate the one-year lease on the following March 1st, the date of termination fixed in the written lease itself. If the tenant may *contract* away the statutory right of notice, we know of no reason why he may not *waive* that right, or *preclude himself from asserting* rights under the section, by the doctrine of equitable estoppel. Presumably the statute was enacted for the benefit of the tenant, and possibly for the benefit of the landlord, but we find nothing in the legislative enactment amending section 10161 of the Code of 1935 to its present form as it appears in the 1939 Code justifying the construction thereof as contended for by the appellants. We find no error in the trial court with respect to any ruling by it permitting the appellee to assert the defenses of estoppel, or of waiver, as against the right of occupancy of the leased land after March 1, 1942, as asserted by the appellants, under Code section 10161.

IV. The defendants appealed not only from every adverse ruling of the court but also from the judgment and decree. Their abstract contains none of the evidence whatsoever. The appeal from the judgment and decree is triable anew in this court, upon the evidential record made in the trial court. Since no such record has been presented to us, it is, of course, impossible to try the cause de novo. The judgment of the trial court must be affirmed.

In a like situation, in McGrath v. Mott, 229 Iowa 790, 793, 794, 294 N. W. 891, 892, 893, we said:

"The abstract sets out no part of the evidence or testimony taken. * * * Under such circumstances, an appeal cannot

be presented de novo to this court. The decree is presumed to be correct. We have so held in a number of cases. See Pappas v. Stathis, 174 N. W. 230 (not reported in Iowa Reports), where we said:

" 'We are of the opinion that this is not a record which we can undertake to review or pass upon. Where it appears that an equitable issue has been heard and decided upon evidence offered by the contending parties, neither can appeal and secure a reversal of the decree below on the merits of the case without laying before this court, in some form, the testimony on which the trial court acted. * * * In the absence of the record, the presumption is in favor of the correctness of the trial court's action.'

"See also Holden v. Voelker, 228 Iowa 589, 293 N. W. 32."

Appellee's motion to dismiss the appeal was ordered submitted with this appeal. In view of our decision, it is unnecessary to pass upon the matters raised in the motion and in the resistance thereto.

The judgment and decree are affirmed.—Affirmed.

All JUSTICES concur.